FINKELSTEIN & KRINSK LLP
Jeffrey R. Krinsk, Esq. (SBN 109234)
jrk@classactionlaw.com
Trenton R. Kashima, Esq. (SBN 291405)
trk@classactionlaw.com
550 West C St., Suite 1760
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile:  (619) 238-5425

Attorneys for Plaintiff
and the Putative Class

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **MELISSA L. VIGIL** , individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MARS INCORPORATED**, a Delaware corporation and **MARS FOOD US, LLC**, a Delaware corporation,<br><br>Defendants. | Case No: 3:16-cv-3818-VC<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1.    **VIOLATION OF CAL. BUS. & PROF. CODE §§ 17500,** *et seq.***;**<br><br>2.    **VIOLATION OF CAL. CIV. CODE §§ 1750,** *et seq.***;**<br><br>3.    **VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200,** *et seq.*<br><br>**<u>JURY TRIAL DEMANDED</u>** |

1

**PRELIMINARY STATEMENT**

2      Please take notice, Plaintiff files this Second Amended Complaint as a matter of course

3  pursuant to Rule 15(a)(1).  Rule 15 provides that "[a] party may amend its pleading once as a matter

4  of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive

5  pleading is required, 21 days after service of a responsive pleading or 21 days after service of a

6  motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. Rule of Civ. Proc. 15(a)(1).  "Rule

7  15 provides different ways to amend a complaint, and these ways are not mutually exclusive."

8  *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1007 (9th Cir. 2015).  Moreover, Rule 15

9  "does not mandate that the matter of course amendment under 15(a)(1) be exhausted before an

10  amendment may be made under 15(a)(2), nor does it state that the ability to amend under 15(a)(1) is

11  exhausted or waived once a 15(a)(2) amendment is made." *Id.*  Rather, a party who first amends its

12  complaint with either the opposing party's written consent or with *the court's leave* still retains the

13  ability to further amend their complaint as a matter of course (assuming such amendment is filed

14  timely). *See id*.

15      On October 7, 2016, the Court granted Defendant's motion to dismiss for failure to state a

16  claim; however, it also granted Plaintiff leave to amend her complaint within 14 days of the order.

17  Accordingly, Plaintiff filed her First Amended Complaint on October 21, 2016.  Since Plaintiff's

18  First Amended Complaint was filed with the Court's leave, it squarely falls under Rule 15(a)(2).

19  Therefore, Plaintiff has not exhausted or waived her right to amend her complaint once as a matter of

20  course and now exercises the right to amend the First Amended Complaint pursuant to Rule

21  15(a)(1).  This subsequent amendment was made necessary by Defendant's baseless Motion to

22  Dismiss [Dkt. No. 35], which called into question Plaintiff's method of measuring in accordance

23  with applicable FDA Regulations.  While Plaintiff is not required to plead evidence in her complaint,

24  the Second Amended Complaint Plaintiff alleges that by adopting Defendant's proposed

25  methodology, Uncle Ben's Ready Rice labels continue to misstate the amount of rice per serving as

26  Plaintiff alleges.

27

28

**SECOND AMENDED COMPLAINT**

Plaintiff Melissa L. Vigil ("Plaintiff") individually and on behalf of all others similarly situated, based on the investigation of counsel and her own individual knowledge as to Plaintiff's own circumstances, hereby complain against defendants Mars, Incorporated and Mars Food US, LLC ("Defendants" or "Mars") as follows:

## I.   INTRODUCTION

1.      Defendants are one of the largest privately held food companies in the world. Defendants market food products under various brand names, one of which is "Uncle Ben's" rice.  A popular product of Defendants is Uncle Ben's Ready Rice – a small microwavable packet of pre-cooked rice that can be prepared in 90 seconds.  Uncle Ben's Ready Rice is marketed in multiple flavors; yet, the packaging, cooking instructions, product and serving size are substantially identical throughout Defendants' Ready Rice line.

2.      For each Ready Rice product, Defendants label the serving size as being "one cup," and the total contents of the package as "about" two servings (or "about" two cups).  Based on Defendants' representation, Plaintiff and members of the putative Class reasonably expect that Defendants' Uncle Ben's Ready Rice products will effectively yield approximately two cups of rice. However, the true yield of the prepared Ready Rice product is never two cups, but rather consistently yields only 66 to 75 percent of the amount represented on the label.  Accordingly, consumers purchasing Defendants' Ready Rice products are materially short changed by at least 25-33 percent.

3.      Defendants' misrepresentations regarding the amount of rice contained in each packet of their Uncle Ben's Ready Rice products violates the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17501, the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1770, *et seq.,* and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17000, *et seq.*  Plaintiff thus seeks restitution, injunctive, declaratory, and other equitable relief as may be deemed proper by the Court.

## II.   JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. §§1332(d), 1446, and 1453(b).  Plaintiff allege that Plaintiff and Class members are citizens of different states as Defendants, and that the cumulative amount in controversy for Plaintiff and the Class exceed $5 million, exclusive of interest and costs.

5.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because many of the acts and transactions giving rise to the violations of law complained of herein occurred in this District, and because Defendants:

(a)      conduct business itself or through agent(s) in this district, by advertising, marketing, distributing and/or retailing its products in this District; and/or

(b)      are licensed or registered in this District; and/or

(c)      otherwise have sufficient contacts with this District to justify Defendants being fairly brought into court in this District.

## III.   PARTIES

6.      Plaintiff Melissa L. Vigil is, and at all times relevant hereto was, a resident of California and a citizen of California.  Plaintiff Vigil purchased Defendants' Uncle Ben's Ready Rice products on at least three different occasions, including purchases of Defendants' Rice Pilaf and Original flavored Ready Rice products.  Plaintiff last purchased Defendants' Uncle Ben's Ready Rice at Safeway in Alameda, California in December 2015.

7.      Defendant Mars, Incorporated is a Delaware corporation with its headquarters in McLean, Fairfax County, VA.  Mars, Incorporated manufactures, markets, advertises, distributes and sells food products throughout the world.

8.      Defendant Mars Food US, LLC is a Delaware limited liability corporation with its headquarters in Rancho Dominguez, Los Angeles County, California.  Mars Food US, LLC is a U.S. subsidiary of Mars, Incorporated and manufactures, markets, advertises, distributes and sells food products, including Uncle Ben's branded rice products, throughout the United States.

## IV.   SUBSTANTIVE ALLEGATIONS

9.      The allegations of this class action can be simply summarized: Defendants' Uncle

- 3 -

SECOND AMENDED COMPLAINT                                    Case No: 3:16-cv-3818-VC

Ben's Ready Rice products fail to yield/render/provide the amount of rice advertised.  California consumers are paying for a set volume of rice that they fail to receive.

10.    The labels on each flavor of Defendants' Ready Rice products are uniform, each containing the same essential representations.  Defendants' Uncle Ben's Ready Rice products comply with FDA-mandated nutritional facts labeling by listing (albeit incorrectly) both the serving size of its product and the number of servings purportedly contained within a packet:



The above label is conspicuously located adjacent to the cooking instructions for the product.  Each of the Uncle Ben's Ready Rice products makes the same representations:  One serving of its rice product is equal to one cup and each product contains "about" two servings.  Each of the Uncle Ben's Ready Rice products should, accordingly, contain close to two cups of prepared rice.  This is demonstrably not the case.

11.    Instead, upon Defendants' Uncle Ben's Ready Rice products being prepared in accordance with the microwave instructions, _the products yields between a 1 1/3 cups and 1 1/2 cups of prepared rice_, as shown in the images below:

///

///

///

- 4 -

 



Measured with a 1 cup measuring cup and a 1/3 cup measuring cup          Measured with a 1 cup measuring cup and a 1/2 cup measuring cup

This is far less than the "about" two cups that a reasonable consumer reasonably expects upon reading the product labels.  The reason that the contents of Defendants' Uncle Ben's Ready Rice does not match consumers' reasonable expectations is because the amount of prepared rice *per serving (i.e. "Serving Size")* is misstated under California and federal law.  Had Defendants followed California and federal law, consumers would have realized that he or she was getting less rice per package than "about" two cups.

12.    California law states that a food "is misbranded if its labeling is false or misleading in any particular."  CAL. HEALTH & SAFETY CODE § 110660.  California has also adopted federal food labeling regulations as the law of this State.  CAL. HEALTH & SAFETY CODE § 110100.  Accordingly, a violation of federal food labeling law is ipso facto a violation of California law. CAL. HEALTH & SAFETY CODE § 110665.  Here, Defendants' Ready Rice products are undoubtedly misbranded.

13.    Both federal and California law require that the serving size of the product and the number of serving per container be disclosed on the product's label.  21 U.S.C. § 343(q)(1).  The serving size must be reported in "a common household measure that is appropriate to the food."  *Id.* In the case of Defendants' Uncle Ben's Ready Rice products, the appropriate household measure, as used by Defendants, is a cup.  21 C.F.R. § 101.9(b)(5).  The requirement that serving sizes for Defendants' rice products be reported in cups is consistent with the fact that consumers are most familiar with cups as a measurement unit for food (most recipe books use cups as the proper unit of measure for rice).  Other measurements like grams or ounces are unedifying by comparison.

SECOND AMENDED COMPLAINT                                    Case No: 3:16-cv-3818-VC

14.    When a food manufacturer labels its products, the relevant state and federal regulations require the number of cups be expressed in 1/4 or 1/3 cup increments.  21 C.F.R. § 101.9(b)(5)(i).  Defendants can round the label indication to the next 1/4 or 1/3 cup increment only if the serving is half way between two increments.  21 CFR 101.9(b)(5)(ix).  Additionally, for medium particulate solids, such as rice, Defendants are required to take into account the free air space found between the grains of rice.  FDA, *Guidance for Industry: Guidelines for Determining Metric Equivalents of Household Measures* (October 1993) ("Medium particulate solids (i.e., nuts, flakes, pastas) should have the particle volume above the fill line approximately equal to the free air space found between particles immediately below the fill line.")  Accordingly, units used in, and method of, measuring a serving size of rice is established by federal and California law.

15.    Federal and California law also provide specific guidelines as to how much rice constitutes a serving of rice.  Defendants first must determine the FDA established Reference Amount Customarily Consumed Per Eating Occasion (or "RACC") for their product."  21 U.S.C. § 343(q)(1)(A)(i); § 101.12(b).  For rice prepared, the RACC is 140 g.  21 C.F.R. § 101.12(b) (Table 2).  But, this is not the end of the analysis; the RACC is not the same as the serving size.  Instead, Defendants are required to translate the RACC (*i.e.* 140 grams of the prepared Uncle Ben's Ready Rice) into the appropriate serving size expressed *in cups*.  FDA, *A Food Labeling Guide*, *Guidance for Industry* (January 2013).  An example from the FDA, for pizza, illustrates the three steps in this process:

1. 1st step: From the RACCs table (21 CFR 101.12(b)), you determine that the RACC for pizza is 140 g.

2. 2nd step: Calculate the fraction of the pizza that is closest to the RACC of 140g (calculations shown for a pie of net weight 16 oz/454 g pizza):

1/3 X 454 g = 151 g
1/4 X 454 g = 113 g

Note that 151 g is closer than 113 g to the RACC for pizza (140 g)

3. 3rd step: The serving size is the fraction closest to the RACC together with the actual gram weight for that fraction of the pizza:

Example: "Serving Size 1/3 pie (151 g)"

FDA, *A Food Labeling Guide*, *Guidance for Industry* (January 2013), L 64.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

16.    Upon follow the exacting protocol, Plaintiff found that the serving size of Defendants' Uncle Ben's Ready Rice should be 3/4 of a cup (at best, based on the numerous tests performed by Plaintiff).  The photographs below show the following: (1) a two ounce weight being used to verify the accuracy of the scale used; (2) an empty measuring cup placed on the scale, with the scale being zeroed out to cancel out the weight of the measuring cup; and (3) one cup of Uncle Ben's Ready Rice, with a weight substantially greater than 140 grams (the scale was switched from ounces to grams for this final measurement):







As demonstrated by the photographs above, the weight of one cup of rice is 218 grams, which is substantially greater than the RACC of 140 grams.[1]  Therefore, Defendants' packaging understates the amount of rice in each cup (i.e. the "Serving Size"), which in turn causes a reasonable consumer to be misled regarding the amount of rice, in cups, contained in the entire package.

---

[1] Note that the amount of rice depicted extends slightly above the rim of the measuring cup to account for the free air space between the grains of rice (as required by the FDA).

- 7 -

SECOND AMENDED COMPLAINT                    Case No: 3:16-cv-3818-VC

17.     Using the same FDA approved three step process, 2/3 (in this particular test) of a cup is much closer to the RACC of 140 grams than Defendants' purported 1 cup serving size:

1. 1st step: From the RACCs table (21 CFR 101.12(b)), you determine that the RACC for rice is 140 g.

2. 2nd step: Calculate the fraction of a cup of rice that is closest to the RACC of 140 g (calculations shown for a cup of rice with of net weight 218 grams):

    1/2 X 218 g = 109 g
    2/3 X 218 g = 145.3 g
    3/4 X 218 g = 163.5 g

Note that 145.3 g is closer than 163.5 g or 109 g to the RACC for rice (140 g)

3. 3rd step: The serving size is the fraction of a cup of rice that is closest to the RACC together with the actual gram weight for that fraction of a cup of rice:

    Example: "Serving Size 2/3 cup (145g)"

*See* FDA, *A Food Labeling Guide*, *Guidance for Industry* (January 2013), L 64.

18.     Defendants, conversely, fail to follow FDA regulations and guidance  to determine a serving size of their Ready Rice products.  They refuse to take into account the amount of free air space found between the grains of rice as required by the FDA.  According to Defendants' own counsel, Defendants assert that the proper method of measuring a cup of Defendants' Uncle Ben's Ready Rice, for the purposes of determining serving size, is to take the straight edge of a knife (not the cutting edge) and use its blade to level off the rice in the cup.  This practice is improper under federal and state food labeling law, also creating the misunderstanding among consumers that Defendants' Ready Rice products contains more rice than it actually does (and more rice than its competitors).  *See* FDA, *Guidance for Industry: Guidelines for Determining Metric Equivalents of Household Measures* (October 1993) (The FDA specifically distinguishes between fine particulate and medium particulate solid foods: "Fine particulate solids (for example, sugars, batter mixes, flours) may be leveled using a knife or other straight-edge after transfer to an appropriate volumetric measure (e.g., a cup measure would be appropriate for determination of tablespoons or teaspoons). Medium particulate solids (i.e., nuts, flakes, pastas) should have the particle volume above the fill line approximately equal to the free air space found between particles immediately below the fill line.").

- 8 -

19.     Even if we were to follow Defendants' methodology, it would not alter the merits of this case.  Plaintiff conducted eleven additional tests, utilizing Defendants' leveling off approach and consistently found that the serving size should be 3/4 cups, not "1 cup" as labeled.  As can be seen in the photographs in Appendix A, Plaintiff utilized a 2 cup, glass measuring cup, with both thirds and quarter increments so as to avoid any dispute relating to the amount measured/weighed.   The photographs in Appendix A reflect the contents of 11 different packages (in various flavors) of Uncle Ben's Ready Rice, noting (1) the package used, (2) the scale zeroed out with the measuring cup on it, (3) the full contents of the package by volume (in cups), (4) the full contents of the package by weight (in grams), (5) one cup of rice by volume, and (6) the weight in grams of one cup of rice.  The weights consistently fell within a small range (between 167 g and 192 g per cup) and as the calculations show, every sample resulted in a serving size of 3/4 cups.

20.     Plaintiff's position is further supported by the fact that the aggregate contents of every package sampled was on average 1½ cups.  Were Defendants  correct in asserting that there are 140 grams in a cup of its Uncle Ben's rice, the total yield of its packages would be, on average, approximately 1.79 cups (i.e. 250 g divided by 140 g, equals 1.79), an amount not achieved in any of Plaintiff's numerous tests.  This fact strikes to the very heart of Plaintiff's complaint by illustrating that a reasonable consumer would assume that if each serving size was "1 cup," then the total yield of the product would be *close* to 2 cups.  Had Defendants followed the regulations and correctly listed the serving size of its products as 3/4 cups of rice, consumers would know that there was only (approximately) 1½  cups of rice per container (or about two servings of a 3/4 cups of rice), not the two cups represented by Defendants.   This holds true even under Defendant's optimistic methodology.

21.     The misrepresentation of the serving size of the Ready Rice products can also negatively impact the accuracy of Defendants' label in other ways.  For example, Defendants' nutritional information for a serving of rice will  also be erroneous, especially when compared to other products on the market that correctly follow the FDA/California labeling regulations.

22.     Plaintiff relied on the accuracy of the label on Defendants' Uncle Ben's Ready Rice products when purchasing the product.  Plaintiff reasonably believed that a single package of the

- 9 -

Ready Rice product would produce "*about*" two cups of rice as represented by Defendants. However, had Plaintiff and other Class members known the truth regarding the Ready Rice products, they would not have purchased the product or would have paid less for it.  Accordingly, Plaintiff and other Class members have been, and continue to be, significantly harmed by Defendants' misrepresentations.

## V.   CLASS ALLEGATIONS

23.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 for the following Classes of persons:

> All persons who purchased Defendants' Uncle Ben's Ready Rice products in California within four (4) years of the filing of this action.

Excluded from the Class are all legal entities, Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with Defendants, as well as any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

24.   Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

25.   While the exact number of Class members is unknown to Plaintiff at this time, and will be ascertained through appropriate discovery, Plaintiff is informed and believes that there are tens of thousands of members in the proposed Class.  The number of individuals who comprise the Class is so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

26.   Plaintiff's claims are typical of the claims of the other members of the Class. All members of the Class have been and/or continue to be similarly affected by Defendants' wrongful conduct as complained of herein, in violation of federal and state law.  Plaintiff is unaware of any interests that conflict with or are antagonistic to the interests of the Class.

27.   Plaintiff will fairly and adequately protect the Class members' interests and have retained counsel that is competent and experienced in consumer class action lawsuits and complex litigation. Plaintiff and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff is aware of her duties and responsibilities to the

- 10 -

1  Class.

2         28.    Defendants have acted with respect to the Class in a manner generally applicable to

3  each Class member. Common questions of law and fact exist as to all Class members and

4  predominate over any questions wholly affecting individual Class members. There is a well-defined

5  community of interest in the questions of law and fact involved in the action, which affect all Class

6  members. Among the questions of law and fact common to the Class are, *inter alia*:

7           a)    What is the amount of rice, in cups, in a serving of Defendants' Uncle Ben's

8  Ready Rice products;

9           b)    Whether Defendants label, market and otherwise advertise the Uncle Ben's

10  Ready Rice products in a deceptive, false, or misleading manner by misstating the amount of

11  consumable rice contained therein;

12           c)    Whether the Uncle Ben's Ready Rice products are misbranded under

13  California law;

14           d)    Whether Defendants sale of the Uncle Ben's Ready Rice products constitutes

15  unfair methods of competition and unfair or deceptive acts or practices in violation of, *inter*

16  *alia*, Cal. Civ. Code §§ 1770 *et seq.*, including:

17               (i)    Whether Defendants misrepresent the source, sponsorship, approval,

18  or certification of the Uncle Ben's Ready Rice products;

19               (ii)    Whether Defendants misrepresent that the Uncle Ben's Ready Rice

20  products have benefits or quantities which they do not have;

21               (iii)    Whether Defendants represent that the Uncle Ben's Ready Rice

22  products are of a particular standard or quality when it is of another; and

23               (iv)    Whether Defendants advertise the Uncle Ben's Ready Rice products

24  with intent not to sell them as advertised;

25           e)    Whether Defendants' sale of the Uncle Ben's Ready Rice products constitutes

26  misleading and deceptive advertising under, *inter alia*, Cal. Bus. & Prof. Code § 17500.

27           f)    Whether Defendants' sale of the Uncle Ben's Ready Rice products constitutes

28  "unlawful," "unfair," or "fraudulent" business acts or practices under, inter alia, Cal. Bus. &

- 11 -

PROF. CODE §§ 17200 et seq., including:

   (i)     Whether Defendants' sale of the Uncle Ben's Ready Rice products constitutes "unlawful" and/or "unfair" business practices by violating the public policies set out in CAL. BUS. & PROF. CODE §§ 1770 *et seq.*, CAL. BUS. & PROF. CODE §§ 17500 and other California and federal food labeling statutes and regulations;

   (ii)    Whether Defendants' sale of the Uncle Ben's Ready Rice products is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers;

   (iii)   Whether Defendants' sale of the Uncle Ben's Ready Rice products constitutes an "unfair" business practice because consumer injury outweighs any countervailing benefits to consumers or competition, and because such injury could not be reasonably avoided by consumers; and

   (iv)    Whether Defendants' mischaracterization of the Uncle Ben's Ready Rice products constitutes a "fraudulent" business practice since members of the public are likely to be deceived;

   g)     The nature and extent of damages, restitution, equitable remedies, and declaratory and injunctive relief to which Plaintiff and the Class are entitled; and

   h)     Whether Plaintiff and the Class should be awarded attorneys' fees and the costs of suit.

   29.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Class members to individually redress the wrongs done to them. There will be no difficulty in managing this action as a class action.

   30.    Defendants have acted on grounds generally applicable to the entire Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**FIRST COUNT**

**Violation of CAL. BUS. & PROF. CODE §§ 17500, *et seq.* -
Untrue, Misleading and Deceptive Advertising
(On Behalf of the Class)**

31.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

32.     At all material times, Defendants engaged in a scheme of offering the Uncle Ben's Ready Rice products for sale to Plaintiff and other members of the Class by way of, *inter alia*, commercial marketing, and advertising, internet content, product packaging and labeling, and other promotional materials.

33.     These materials, advertisements and other inducements misrepresented the true amount of rice in the Uncle Ben's Ready Rice products.  Said materials, advertisements, and other inducements were directed at consumers in the State of California by Defendants.

34.     Defendants' advertisements and other inducements come within the definition of advertising as contained in CAL. BUS. PROF. CODE §§ 17500, *et seq.*, in that such promotional materials were intended as inducements to purchase Defendants' Uncle Ben's Ready Rice products and are statements disseminated by Defendants to Plaintiff and other members of the Class.

35.     Defendants knew, or in the exercise of reasonable care should have known, that the statements regarding the Uncle Ben's Ready Rice were false, misleading, and/or deceptive. Defendants are responsible for terming the serving size and total yield of their products under federal and state law.

36.     Consumers, including Plaintiff and members of the Class necessarily and reasonably relied on Defendants' statements regarding the contents of its products.  The falsity and misleading nature of Defendants' statements could not be discovered based on common knowledge and/or by simply examining face of the Uncle Ben's Ready Rice's labels before purchasing them. Consumers, including Plaintiff and members of the Class, were among the intended targets of Defendants' representations.

37.     The above acts of Defendants, in disseminating said misleading and deceptive statements throughout the State of California, including to Plaintiff and members of the Class, were

- 13 -

and are likely to deceive reasonable consumers by obfuscating the amount of rice contained within the Uncle Ben's Ready Rice products, and thus are violations of CAL. BUS. PROF. CODE §§ 17500, *et seq*.

38.     Plaintiff and Class members were harmed and suffered injury as a result of Defendants' violations of the CAL. BUS. PROF. CODE §§ 17500, *et seq*. Defendants have been unjustly enriched at the expense of Plaintiff and the members of the Class.

39.     Accordingly, Plaintiff and members of the Class seek injunctive relief prohibiting Defendants from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendants' wrongful conduct to the fullest extent permitted by law. Misbranded food products cannot legally be manufactured, held, advertised, distributed or sold. Thus, a misbranded food product has no economic value and is worthless as a matter of law, and purchasers of adulterated food products are entitled to restitution of the purchase price of the product.

## SECOND COUNT

### Violation of CAL. BUS. & PROF. CODE §§ 17500, *et seq.* - Untrue, Misleading and Deceptive Advertising (On Behalf of the Class)

40.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

41.     Defendants' Uncle Ben's Ready Rice products are a "good" as defined by California Civil Code section 1761(a).

42.     Defendants are a "person" as defined by California Civil Code §1761(c).

43.     Plaintiff and Class members are "consumers" within the meaning of California Civil Code section 1761(d) because they purchased the Uncle Ben's Ready Rice products for personal, family or household use.

44.     The sale of the Uncle Ben's Ready Rice products to Plaintiff and Class members is "transaction" as defined by California Civil Code §1761(e).

45.     By labeling the Uncle Ben's Ready Rice products as containing a certain amount of rice, when they do not, Defendants violated California Civil Code section 1770(a)(2), (5), (7) and

- 14 -

(9), as it misrepresented the standard, quality, sponsorship, approval, and/or certification of its products.

46.     As a result of Defendants' conduct, Plaintiff and Class members were harmed and suffered actual damages as a result of Defendants' unfair competition and deceptive acts and practices. Had Defendants disclosed the true nature and/or not falsely represented the Uncle Ben's Ready Rice products, Plaintiff and members of the Class would not have been misled into purchasing Defendants' products, or, alternatively, would have paid significantly less for them.

47.     Plaintiff, on behalf of herself and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the State of California, seeks injunctive relief prohibiting Defendants continuing these unlawful practices pursuant to California Civil Code § 1782(a)(2).

48.     Plaintiff provided Defendants with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a) *via* certified mail, demanding that Defendants correct such violations.  Should Defendants fail to adequately respond to Plaintiff's notice within 30 days, Plaintiff will amend this complaint and seek all available damages under the CLRA for all violations complained of herein, including, but not limited to, statutory damages, punitive damages, attorneys' fees and costs and any other relief that the Court deems proper.

## **THIRD COUNT**

**Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* -**
**Unlawful Business Acts and Practices**
**(On Behalf of the Class)**

49.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

50.     The Sherman Law, HEALTH & SAF. CODE §§ 109875 *et seq.*, broadly prohibits the misbranding of any food products. The Sherman Law provides that food is misbranded "if its labeling is false or misleading in any particular." HEALTH & SAF. CODE § 110660.

51.     Defendants are persons within the meaning of HEALTH & SAF. CODE § 109995.

52.     Additionally, California has adopted as its own, and as the Sherman Law expressly incorporates, "[a]ll food labeling regulations and any amendments to those regulations adopted

- 15 -

pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date" as "the food labeling regulations of this state" including, but not limited to, those adopted pursuant to 21 U.S.C. § 343.

53.     The California Civil Code § 1770(a)(2), (5), (7) and (9) also prohibits mislabeling food misrepresenting the standard, quality, sponsorship, approval, and/or certification of food products, as noted in above.

54.     The business practices alleged above are unlawful under Business and Professional Code §§ 17500, *et seq*., California Civil Code §§ 1770(a)(2), (5), (7) and (9) and the Sherman Law, each of which forbids the untrue, fraudulent, deceptive, and/or misleading marketing, advertisement, packaging and labeling of food products.

55.     These materials, advertisements and other inducements misrepresented the true amount of rice in the Uncle Ben's Ready Rice products.  Said materials, advertisements, and other inducements were directed at consumers in the State of California by Defendants.

56.     Plaintiff and Class members were harmed and suffered injury as a result of Defendants' actions.  Defendants have been unjustly enriched at the expense of Plaintiff and the members of the Class.

Accordingly, Plaintiff and members of the Class seek injunctive relief prohibiting Defendants from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendants' wrongful conduct to the fullest extent permitted by law. Misbranded food products cannot legally be manufactured, held, advertised, distributed or sold.  Thus, a misbranded food products has no economic value and is worthless as a matter of law, and purchasers of adulterated food products are entitled to restitution of the purchase price of the product.

## FOURTH COUNT

### Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* - Unfair Business Acts and Practices (On Behalf of the Class)

57.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

- 16 -

58.     Plaintiff and other members of the Class who purchased the Uncle Ben's Ready Rice products suffered a substantial injury by virtue of buying a product that misrepresented the true amount of rice contained therein.  Had Plaintiff and members of the Class known that Defendants' materials, advertisement and other inducements misrepresented the true contents of its products, they would not have purchased said products. Additionally, the Class Products are misbranded under federal law, and may not be purchased or sold.

59.     Defendants' actions alleged herein violate the laws and public policies of California and the United States, as set out in the preceding paragraphs of this Complaint.

60.     There is no benefit to consumers or competition by allowing Defendants to sell misbranded food products and deceptively market, advertise, package and label its products.

61.     Plaintiff and Class members who purchased the Uncle Ben's Ready Rice products had no way of reasonably knowing that these products were deceptively marketed, advertised, packaged and labeled, and/or adulterated.   Thus, Plaintiff and Class members could not have reasonably avoided the injury they suffered.

62.     The gravity of the harm suffered by Plaintiff and Class members who purchased the Uncle Ben's Ready Rice products outweighs any legitimate justification, motive or reason for marketing, advertising, packaging and labeling the these products in a deceptive and misleading manner. Accordingly, Defendants' actions are immoral, unethical, unscrupulous and offend the established public policies as set out in federal regulations and state law and is substantially injurious to Plaintiff and members of the Class.

63.     Plaintiff and Class members were harmed and suffered injury as a result of Defendants' violations of the CAL. BUS. PROF. CODE §§ 17200, *et seq*.   Defendants have been unjustly enriched at the expense of Plaintiff and the members of the Class.

64.     Accordingly, Plaintiff and members of the Class seek injunctive relief prohibiting Defendants from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendants' wrongful conduct to the fullest extent permitted by law. Misbranded food products cannot legally be manufactured, held, advertised, distributed or sold.  Thus, a misbranded food products has no economic value and is

- 17 -

1    worthless as a matter of law, and purchasers of adulterated food products are entitled to restitution of

2    the purchase price of the product.

3    **FIFTH COUNT**

4    **Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* -**
      **Fraudulent Business Acts and Practices**

5    **(On Behalf of the Class)**

6    65.    Plaintiff hereby incorporates by reference the allegations contained in the preceding

7    paragraphs of this Complaint.

8    66.    The acts of Defendants as described above constitute a fraudulent business practice

9    under Business and Professional Code §§ 17200, *et seq*.

10   67.    As more fully described above, Defendants misrepresented the true amount of rice

11   contained therein in the Uncle Ben's Ready Rice products.

12   68.    Defendants' misleading marketing, advertising, packaging, and labeling are likely to,

13   and do, deceive reasonable consumers.  Indeed, Plaintiff was deceived about the true amount of rice

14   contained in Defendants' Uncle Ben's Ready Rice products, as Defendants' marketing, advertising,

15   packaging, and labeling of its products misrepresents amount of rice contained in the Ready Rice

16   products. Said acts are fraudulent business practice and acts.

17   69.    Defendants' misleading and deceptive practices caused Plaintiff and Class members

18   to purchase Defendants' products and/or pay more than they otherwise would have if they knew the

19   true amount of rice contained in the Ready Rice products.

20   70.    Plaintiff Vigil and Class members were harmed and suffered injury as a result of

21   Defendants' violations of the CAL. BUS. PROF. CODE §§ 17200, *et seq*.  Defendants have been

22   unjustly enriched at the expense of Plaintiff and the members of the Class.

23   71.    Accordingly, Plaintiff and members of the Class seek injunctive relief prohibiting

24   Defendants from continuing these wrongful practices, and such other equitable relief, including full

25   restitution of all improper revenues and ill-gotten profits derived from Defendants' wrongful conduct

26   to the fullest extent permitted by law. Misbranded food products cannot legally be manufactured,

27   held, advertised, distributed or sold.  Thus, a misbranded food products has no economic value and is

28   worthless as a matter of law, and purchasers of adulterated food products are entitled to restitution of

- 18 -

1    the purchase price of the product.

2    **VI.     PRAYER FOR RELIEF**

3            WHEREFORE, Plaintiff and the Class pray for relief and judgment as follows:

4            A.      For an order declaring that this action is properly maintained as a class action and

5    appointing Plaintiff as a representative for the Class, and appointing Plaintiff's counsel as Class

6    counsel;

7            B.      That Defendants bear the costs of any notice sent to the Class;

8            C.      For an order awarding Plaintiff and the members of the Class actual damages,

9    restitution and/or disgorgement, to the extent allowed under the law;

10           D.      For an order enjoining Defendants from continuing to engage in the unlawful and

11   unfair business acts and practices as alleged herein;

12           E.      For an order awarding Plaintiff and the members of the Class pre- and post-judgment

13   interest;

14           F.      For an order awarding attorneys' fees and costs of suit, including expert witnesses'

15   fees as permitted by law; and

16           G.      Such other and further relief as this Court may deem just and proper.

17   **VII.    JURY TRIAL DEMAND**

18           Plaintiff demands a trial by jury for all of the claims asserted in this Complaint so triable.

19

20   DATED: November 21, 2016                    Respectfully submitted,

21                                               FINKELSTEIN & KRINSK LLP

22                                               By:  /s/ Trenton R. Kashima

23                                               Jeffrey R. Krinsk, Esq.
                                                 Trenton R. Kashima, Esq.
24                                               550 West C St., Suite 1760
                                                 San Diego, CA 92101-3593
25                                               Telephone:  (619) 238-1333
                                                 Facsimile:   (619) 238-5425
26
                                                 *Attorneys for Plaintiff*
27                                               *and the Putative Classes*

28

- 19 -

SECOND AMENDED COMPLAINT                                 Case No: 3:16-cv-3818-VC